By the Court.—Freedman, J.
The appellants, Wettstein and Meyer, claim that they were discharged from the claim in suit by reason of the release of Oehninger, who was jointly liable with them, if they were liable at all. If this alleged release was either a separate composition or compromise by one of several partners or joint debtors within the meaning of the statute of 1838, it only discharged Oehninger, especially as the creditors who executed it, in express terms reserved their rights against the other members of the firm. If it was neither, if it is to be judged by the rule of the common law, it cannot operate as a release even as to Oehninger, because it bears no seal and no consideration was given for it in fact. The complaint as to Oehninger having been dismissed, and the plaintiffs not having appealed, it is sufficient to hold that his release is not available to Wettstein and Meyer as a bar.
The appellant, Meyer, next claims that he was entitled to a dismissal of the complaint as to himself by reason of the discharge in bankruptcy obtained by him after the dissolution of the firm. To this the plaintiffs reply that the discharge, even if it were otherwise available to Meyer against debts due by him as a member of the firm, can have no operative force against *134 them, because they were and are residents and citizens of Switzerland. True, it has been repeatedly held that a discharge granted in one State under the insolvent laws of such State cannot affect creditors who are citizens or residents of another State of the Union. Such a discharge has been held, so far as citizens or residents of other States of the Union are concerned, to be in contravention of that provision of the Constitution of the United States which declares that no State shall pass a law impairing the obligation of contracts. (Soule v. Chase, 39 N. Y. 342 ; Pratt v. Chase, 44 Id. 597; Baldwin v. Hale, 1 Wall. 223.)
But whether the power of Congress is similarly restricted as against citizens or residents of foreign countries, is quite another question. The power to pass uniform laws on the subject of bankruptcies throughout the United States is expressly conferred upon Congress, and may be exercised to the exclusion of all regulations on the part of the several States. It is not limited by a saving clause in favor of foreign creditors. True, even an act of Congress can have no extra-territorial force, and whenever foreign tribunals are called upon to pass upon the effect, within their jurisdiction, of a discharge in bankruptcy under the statutes of the United States upon citizens or residents of their country, they may decide the question according to the law of their own land. But when the question is raised ■in any court of the United States or of one of the several States, and especially when the jurisdiction of any •such court is invoked by foreign creditors to enforce a debt which otherwise would be clearly barred, the determination, in the absence of all limitation by treaty •or by the Constitution, depends upon the intention of the law-making power of the United States as it may be gathered from the statute. That there is no limitation upon the power of Congress, except the requirement of uniformity in the law, and that consequently *135 it is competent for Congress to act on the whole subject of bankruptcy in every other respect with a plenary discretion, has been repeatedly decided. I do not deem it necessary, however, to enter upon a discussion of the intent of the statute as to the particular point so far discussed, as there is another objection to the availability of the discharge in this action, which was also made below, and which must be sustained. The discharge upon its face purports to discharge Meyer only from his individual debts. As to the legal effect of such a discharge Judge Raparlo, in delivering the opinion of the court of appeals, in Poillon v. Lawrence (77 N. Y. 207), uses the following language, viz. :
“We have not deemed it necessary to pass upon the question whether the proceedings in this case were in proper form to bar debts due by Lawrence as a member of the firm of Lazarus & Wolff. Corey v. Perry (67 Maine, 140) holds that under such proceedings, giving no schedule of firm debts or assets, nor praying for a discharge from firm liabilities, the discharge when obtained will relieve the bankrupt only from his individual indebtedness, and not from partnership liability. This position seems to be sustained by numerous authorities (1 Bankr. Reg. 341; 22 Wall. 395; 3 3 Biss. 491 ; Hodgins v. Lane, 11 Nat. Bankr. Reg. 463; 15 Id. 417; 2 Ben. 96; 3 Id. 386 ; 6 Id. 20; 10 Nat. Bank. Reg. 331 ; 17 Id. 76). The assignee under such a proceeding acquires no title to the firm assets, and it would seem to follow that a discharge granted therein should not affect the firm debts. Whether it bars re- . course to the separate estate of the discharged partner, for a firm debt, does not seem to have been authoritatively determined.
While the question thus remains an open one, it seems best that this court should follow the clear weight of the authorities, by which it was held, that while a member of a late partnership may, upon his in *136 dividual petition, be discharged from all his debts, partnership as well as individual, provided there are ’ no partnership assets to be administered, he cannot, in case of the existence of such assets, be discharged from the liabilities of the firm, unless the firm is declared bankrupt and the firm assets are brought into the bankruptcy court to be administered according to the provisions of the bankruptcy act. Under these decisions, and especially as the discharge of Meyer only purported to discharge him from his individual liabilities, the motion to dismiss as to him was properly denied.
The pendency of the proceedings before the referee under the .judgment of dissolution granted by the supreme court, cannot be deemed a bar to this action, because in those proceedings the plaintiffs can recover only their proportionate share in the partnership assets and they are left at liberty to otherwise pursue the individual partners.
The determination had as to the case marked W O 0 Mo. 9, is conclusive, as a former adjudication between the parties, as far as it goes ; but as it only went to the effect that the goods were sold and not consigned, and that consequently the title passed, the plaintiffs were left free to sue for the price.
The most important remaining question relates to-the defense of fraud upon the government interposed by the receiver. All evidence sought to be introduced by the receiver for that purpose, was excluded, mainly on the ground that no such defense had been set up by the other defendants and that consequently it did not concern the receiver. The alleged fraudulent invoices were admitted, but only on the question of the value of the goods sued for. In this the learned trial judge clearly erred. The receiver represented not merely the members of the late firm, but the assets of the firm and the bona fide creditors entitled to them, *137 and he was bound to protect the assets against unjust or illegal claims. He had been duly made a party to-the record in this action with leave to defend in his representative capacity. The only-conditions imposed were that his coming in should not affect the complaint of the plaintiffs or the answers of the other defendants, nor the depositions already taken. He was not limited to any particular line of defense, and consequently had the right to set up as many as he had reason to believe could be substantiated. The question of collusion between the plaintiffs and one or more of the-members of the firm of Wettstein, Oehninger & Co. was not an issuable fact to be determined at the trial, and the amendment allowing such collusion to be averred which was made in the course of the trial, was wholly unnecessary and did not affect the rights which the receiver otherwise possessed. The question of collusion was disposed of by the proceeding which terminated in the order allowing the receiver to come in and defend without limitation, and as that order was not appealed from, he had a right to substantiate at the trial, if he could, every defense interposed, and to claim such, a verdict as his proof entitled him to. He did interpose as a distinct and separate defense that the-transactions out of which the suit arose were illegal and against good morals in their inception and carried on in violation 'of the law of the land, and he had a right to show it. if he could. Enough appears in the case to show that the defense was not altogether without any foundation in fact. That this defense may enure to the benefit of the other defendants, though not pleaded by them, can under the exceptional circumstances of this case make no difference, lor the object of the plaintiffs in this'action clearly is to obtain a judgment having the force and effect of a final and conclusive adjudication as to their right to share in the assets of the firm in the hands of the receiver together *138 with the bona fide creditors. That such assets are insufficient to satisfy all creditors in full, is a conceded fact in the case. For the reasons stated the court below erred in excluding the evidence offered by the receiver for the purpose of substantiating the defense of fraud and in refusing to pass in any manner upon the issue raised by the interposition of that defense. For the same reasons the receiver could not be deprived of his right of appeal by the direction of a verdict against Wettstein and Meyer only. The facts that he is a party to the record, that he has an interest in the result, and that he feels aggrieved by the disposition made, give him a sufficient standing before the general term.
As the conclusions already reached necessarily call for a new trial, it is unnecessary to consider the remaining questions.
The judgment appealed from should be reversed and a new trial ordered as against the appellants, with costs to appellants to abide the event.
Spbie, J., concurred.